**Rosemary C. MOGGE and Office Employees International Union, Local 28, AFL–CIO, Plaintiffs-Appellees,**

**v.**

**DISTRICT 8, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, Defendant-Appellant.**

**No. 18897.**

United States Court of Appeals, Seventh Circuit.

Dec. 1, 1971.

Sheldon Charone, Sherman Carmell, Stuart N. Litwin, Chicago, Ill., for defendant-appellant; Carmell & Charone, Chicago, Ill., Plato Papps, Washington, D. C., of counsel.

Barnabas P. Sears, James N. Kosmond, Chicago, Ill., for plaintiffs-appellees; Boodell, Sears, Sugrue & Crowley, Chicago, Ill., of counsel.

Before HASTINGS, Senior Circuit Judge, FAIRCHILD and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

This action was commenced October 15, 1965, pursuant to Section 301(a) of the Labor-Management Relations Act of 1947[1] by Mrs. Mogge and her union, Local 28,[2] to recover damages for her discharge by another union, her employer.[3] These proceedings were stayed by the district court on April 21, 1967, pending arbitration. We affirmed the stay order in Mogge v. District No. 8, Int'l Ass'n of Machinists, AFL–CIO, 7 Cir., 387 F.2d 880, cert. denied, 391 U.S. 936, 88 S.Ct. 1849, 20 L.Ed.2d 855 (1968).

On April 1, 1970, the arbitrator rendered his opinion and award in favor of Mogge and Local 28. District No. 8 refused to offer Mogge reinstatement or back pay as awarded. Accordingly, plaintiffs moved to reinstate the cause below and for enforcement of the award by the district court. On September 28, 1970, the district court reinstated the cause, confirmed the arbitration award, and entered judgment thereon. District No. 8 appealed. We affirm.

Mogge had been employed by District No. 8 since August, 1950 and prior to her discharge was the administrative secretary in charge of three other secretaries for District No. 8. Upon her return from maternity leave in August, 1963, Mogge began working on a three day a week basis. In February, 1965, Mogge's supervisor was replaced by a Mr. Glover. He instituted certain changes in office procedures. On April 5, 1965, the troubles involved in this protracted case arose. Glover instructed Mogge to report to work five days a week beginning the week of April 12. She was also to be relieved of certain administrative duties. Mogge protested, claiming she had a right under the collective

---

1. Section 301(a), 29 U.S.C.A. § 185(a), provides:

    "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

2. Office & Professional Employees International Union, Local 28, AFL–CIO.

3. District No. 8, International Association of Machinists and Aerospace Workers, AFL–CIO (hereinafter District No. 8).

bargaining agreement to work only three days a week.[4]

At this juncture, Mogge reported the impasse to Sarah Keenan, the business representative for Local 28. After an April 12 conference attended by Mogge, Keenan, Glover and George Gray from District No. 8, Glover advised Keenan that Mogge's grievance was denied on the ground that there had been no violation of the collective bargaining agreement. On April 13 (a non-work day on her previous three day schedule) Mogge failed to report for work. She was immediately discharged.

The arbitrator found that District No. 8 had a right under the contract to require Mogge to work five days a week at a higher salary without negotiating with the union. However, he found that her discharge was without "just and sufficient cause", since she was justified in believing she was being demoted without reason, Glover having relieved her of certain responsibilities. Also, District No. 8 had refused to give her a reasonable time to find a baby sitter for the additional work days. No specific remedy was provided for in the contract. The arbitrator awarded reinstatement and back pay for 100 weeks at $145 per week. He characterized the monetary award as "in the nature of liquidated damages" since it was difficult to determine Mogge's actual damages over the 260 week period from the time of her discharge to the date of his award.

The question presented for review is whether the arbitrator's decision and award exceeded his contractual authority.

Due to the nature of the parties, District No. 8, a union and employer in this case, is faced with the unique opportunity to argue management's position. Accordingly, District No. 8 contends that the arbitrator exceeded his contractual authority by ordering reinstatement and back pay at a salary and position which it claims no longer existed. It argues that the contract had expired at the time of the award and had not been renewed. This factor is said to distinguish the present case from United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960). There the Supreme Court upheld an arbitrator's award for reinstatement after the expiration of a contract, but which had been renewed.

The only evidence which District No. 8 has presented concerning the expiration of the contract was offered for the first time in the district court when it answered plaintiff's motion for reinstatement of the case and enforcement of the award. Such evidence was a document entitled "Affidavit of Russell R. Oddo", along with certain exhibits which purported to show that the collective bargaining agreement between the parties had expired on December 31, 1966. These matters were never presented to the arbitrator, nor was there any showing

---

4. The following letter was attached to the collective bargaining agreement:

January 1, 1964
LETTER OF UNDERSTANDING
It is understood and agreed between District No. 8, International Association of Machinists known as the Employer, and the Office Employees' International Union, Local 28, known as the Union, that the Administrative Secretary, Rosemary Mogge, shall work three days per week, and that the Steno-Typist, Doris Farley, shall work three days per week at the salaries stipulated in Schedule "B" of this agreement.

In the event Rosemary Mogge shall return to her original five day week, her salary shall be reinstated to $185.00 per week. If Doris Farley should commence working a five day week, her salary would be open to negotiation, but would be at least a minimum of $100.00 per week, as agreed to when she first became employed by the Employer.

This is the only Letter of Understanding attached to and made part of this agreement.
Office Employees' International Union, Local 28
By / Sarah E. Keenan
Business Representative
/ Rosemary Mogge
DISTRICT NO. 8, INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO
By / James McDonald
Directing Business
Representative

that they were unavailable at that time or any reason given for their not being presented.

■■ Since the burden was on District No. 8 to prove to the arbitrator that the contract had expired so that he could take this into consideration in fashioning a remedy, it may not now complain that the award is unjustified. On the state of the record presented to the arbitrator, he was fully justified in awarding reinstatement and back pay after the alleged expiration of the contract.[5]

■ Having failed without cause to bring these extraneous matters to the arbitrator's attention, District No. 8 may not supplement the record at this late date. The national labor policy of encouraging private arbitration of labor disputes, because of its potential for expeditious disposition of these matters without resort to the courts, has been thwarted in this protracted case. To allow District No. 8, after arbitration, to have the court supplement the record with information that was available at the time of arbitration would further undermine the very purpose of private arbitration. We have concluded that these matters were never properly preserved for appeal.

■ Even assuming that the contract had expired, we do not feel that the arbitrator exceeded his contractual authority. The threshold question for us here is the scope of our review. The Supreme Court in *Enterprise Wheel, supra,* 363 U.S. at 599, 80 S.Ct. at 1362, announced: "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." "[The arbitrator] may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement." *Supra,* at 597, 80 S.Ct. at 1361. We have held this standard to mean that a reviewing court should not disturb the award so long as the interpretation was not arbitrary. Local 7–644, Oil, Chemical and Atomic Workers Int'l Union, AFL–CIO v. Mobil Oil Co., 7 Cir., 350 F.2d 708 (1965), cert. denied, 382 U.S. 986, 86 S. Ct. 563, 15 L.Ed.2d 474 (1966). Hence, we recognize that our review is severely circumscribed.

The dispute in this case arose during the term of a valid agreement which provided for arbitration but left it to the arbitrator to fashion an appropriate remedy.[6] Unlike matters before the Labor

---

5. From a careful reading of the termination provision of the collective bargaining agreement set out below, it can easily be seen how the arbitrator could have concluded that the agreement was still in force, especially when he was given no information to the contrary. The collective bargaining agreement provided:

"ARTICLE XIV—Termination
Section 1. It is agreed that this agreement shall be effective as of the *1st* day of *January* 1964, and shall thereafter continue in full force and effect until and including *December 31,* 1966. On or before sixty (60) days prior to the expiration hereof, either party may notify the other in writing, of its desire to negotiate for the renewal of this agreement, either in its present form, or with such changes or modifications as may be desired. Upon such notification, the parties hereto shall immediately confer for the purpose of such negotiations. In the event that written notice is not delivered by either party, as provided above, then in that event, this agreement shall be automatically renewed for an additional period of one (1) year from the date of the expiration hereof, or of any extension thereof, and in like manner annually, unless notice of termination is given."

6. The agreement provided in relevant parts:

"ARTICLE I—Jurisdiction
Section 1. The jurisdiction of this agreement shall cover all male and female clerical employees coming under the jurisdiction of the Union (O.E.I.U., Local No. 28), employed in the office of District No. 8. It shall be understood that all clerical employees in the Chicago office of District No. 8 are covered

Board, the parties to an arbitration proceeding have privately agreed to that procedure to settle their disputes. The contract between Local 28 and District No. 8 did not provide for a specific remedy in the case of a wrongful discharge, nor did it contain any restriction on the arbitrator.

■ Here the arbitrator found that Mogge was discharged without "just and sufficient cause".[7] He based his decision on the fact that Mogge had been a loyal employee for nearly fifteen years and he further found that the actions of Glover in instituting changes in her duties reasonably led her to believe that she was being unilaterally demoted in violation of the collective bargaining agreement. Other important factors were that District No. 8 refused to give her a reasonable time in which to find a baby sitter for the additional work days, as above stated, and that Mogge never expressly refused to work the additional days. The arbitrator felt that with fifteen years of unimpeachable service Mogge deserved greater consideration

than was shown her. We conclude that this decision was not arbitrary or capricious.

The remaining question concerns the propriety of the arbitrator's remedy, that is his ordering reinstatement with 100 weeks back pay. District No. 8 calls this award of back pay speculative because the arbitrator labeled it as "in the nature of liquidated damages". The arbitrator so labeled this award, as hereinbefore pointed out, because of the difficulty in determining actual unmitigated damages suffered by Mogge. This is nothing more than a disagreement with the arbitrator's considered judgment. The Supreme Court has given the duty of fashioning a just remedy to the privately selected arbitrator. *Enterprise Wheel, supra,* 363 U.S. at 597, 80 S.Ct. 1358.

■ The reported decisions make it abundantly clear that where the contract is not explicit concerning the proper remedy, the arbitrator is given wide latitude in fashioning an appropriate remedy. *Enterprise Wheel, supra;* Int'l Ass'n of

under the jurisdiction of this agreement."

"*ARTICLE VI*—Seniority

Section 1. The Employer recognizes the seniority rights of all employees. The seniority list, attached hereto and known as Schedule "A", when approved by the Union and the Employer will be recognized as the official seniority list and incorporated into this agreement.

Section 2. New employees shall be considered probationary for 30 days from the date of hiring and may be discharged or laid off, if proved unsatisfactory within that period of time.

\*   \*   \*   \*   \*

Section 7. Employees employed by the Employer at the execution date of this agreement, and employees hired to fill a permanent position covered by this agreement, *may not be dismissed, suspended or demoted without just and sufficient cause,* except as provided in Section 2 above." (Emphasis added.)

"*ARTICLE XIII*—Grievance & Arbitration Machinery

Section 1. All employees shall at all times make an effort to perform their duties in such a manner as to permit the efficient operation of the office. When an employee has a grievance, he or she shall first make an effort to

arrive at a satisfactory settlement through the Union Steward. In the event the grievance is not settled in this manner, the Executive Officer of the Employer will be consulted by the Union Business Representative, or her agent. If the grievance still exists, within ten (10) calendar days the matter may be submitted to arbitration.

Section 2. The Board of Arbitration shall be composed of three (3) members. One representative selected by the Union, one Representative selected by the Employer and an impartial Chairman to be selected by *those two* members of the Board of Arbitration. If an impartial Chairman cannot be selected by those two members of the Board of Arbitration, then either party will have the right to request the Federal Mediation & Conciliation Service to appoint a third member of the Board to act *as* impartial chairman. The findings and decision of the Board of Arbitration shall be final and binding and conclusive upon all parties. Expenses of the impartial Chairman incurred be borne equally by both parties."

The parties here waived a 3-man Board and agreed to a single arbitrator.

7. See, Article VI—Seniority Section 7, *supra,* n. 6.

Machinists, District No. 8 A.F.L.–C.I.O. v. Campbell Soup Co., 7 Cir., 406 F.2d 1223, cert. denied, 396 U.S. 820, 90 S.Ct. 57, 24 L.Ed.2d 70 (1969); and Lodge No. 12, Dist. No. 37, Int'l Ass'n of Machinists v. Cameron Ironworks, 5 Cir., 292 F.2d 112, cert. denied, 368 U.S. 926, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961). "When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations." *Enterprise Wheel, supra,* 363 U.S. at 597, 80 S.Ct. at 1361.

Accordingly, we hold that the arbitrator's decision and award was not arbitrary and capricious but was wholly justified. On the authority of *Enterprise Wheel, supra; Local 7–644; Campbell Soup, supra,* together with San Francisco-Oakland Newspaper Guild v. Tribune Publishing Co., 9 Cir., 407 F.2d 1327 (1969); and Ludwig Honold Mfg. Co. v. Fletcher, 3 Cir., 405 F.2d 1123 (1969), we affirm.

Affirmed.

Choy, Circuit Judge, dissented and filed opinion.