**UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 400, Plaintiff,**

v.

**MARVAL POULTRY CO., Defendant.**

**MARVAL POULTRY CO., et al., Plaintiffs,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 400, Defendant.**

Civ. A. Nos. 85–0065–H, 85–0023–H.

United States District Court, W.D. Virginia, Harrisonburg Division.

Sept. 23, 1986.

Glenn M. Hodge, Wharton, Aldhizer & Weaver, Harrisonburg, Va., James W. Wimberly, Jr., Monica M. Bekken, Wimberly, Lawson & Cobb, Atlanta, Ga., for plaintiff.

Robert E. Paul, Zwerdling, Paul, Leibig, Kahn & Thompson, P.C., Washington, D.C., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This is a consolidated action in which two employee grievances were filed by United Food and Commercial Workers, Local 400 ("Local 400") against Marval Poultry Company, Inc., ("Marval") a turkey processing and sales company. Jurisdiction in both cases was based upon § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185 (1982). Local 400 is a "labor organization" within the meaning of 29 U.S.C. § 152(5) (1982), and Marval is an "employer" within the meaning of 29 U.S.C. § 152(2) (1982).

■ The latest collective bargaining agreement between the parties regarding certain production and maintenance employees of Marval was effective by its terms from June 1, 1981, until June 2, 1984. The collective bargaining agreement contained a broad grievance procedure which authorized binding arbitration proceedings for any employee grievances filed under its terms. Federal district courts have jurisdiction over actions to enforce arbitration agreements. *Textile Worker's Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *United Steel Workers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

This action is a review of arbitration decisions rendered in favor of the union on behalf of two employees of Marval, namely, John Rexrode and Geneva Shifflett. Both parties have moved for summary judgment, and this Court must decide whether the arbitration awards granting reinstatement and back pay for both employees shall remain in effect. Marval alleges that expiration of the collective bargaining agreement precludes the arbitrators' awards of reinstatement and back pay after the expiration date and, alternatively, that an offer of reinstatement subject to immediate transfer satisfied the reinstatement obligation and that the employees' failure to mitigate their damages also less-

ens its liabilities. The union contends that this Court's limited scope of review mandates that arbitrators' remedies be enforced, and alleges that the employer failed to raise these defenses during arbitration proceedings and is estopped from doing so in this Court.

### A. The *Rexrode* Award

On November 1, 1983, Marval terminated employee John Rexrode, a live-haul truck driver who had been involved in an accident while driving one of Marval's poultry trucks. Local 400 immediately filed a grievance concerning the termination under the terms and conditions of the collective bargaining agreement, and these proceedings culminated in a finding by arbitrator Herbert Fishgold that Rexrode's conduct did not warrant termination, but rather a suspension of two months. The arbitrator accordingly revoked the discharge and imposed a sixty-day suspension effective retroactively to November 1, 1983, ordering that the grievant was to be reinstated at the effective conclusion of the sixty-day suspension with appropriate back pay and benefits.

This decision was rendered on October 25, 1984, and Marval requested clarification through a series of letters dated November 2, 1984, to December 15, 1984. The arbitrator's "clarified" statement confirmed his original decision on January 2, 1985. Marvel had offered conditional reinstatement to Rexrode on October 31, 1984, it being understood that Rexrode was to be immediately "transferred" to the position of catcher at a lower wage rate than he had previously been receiving as a truck driver. Rexrode declined this offer, believing he was being "reinstated" to a different job. Full unconditional reinstatement was offered by Marval to Rexrode on January 16, 1985, which was also refused by Rexrode. Both parties are in agreement that the January 16, 1985, offer tolls the employer's obligations as to either reinstatement or back pay. Local 400 filed suit in this court on Rexrode's behalf for back pay in accordance with the arbitration award.

### B. The *Shifflett* Award

Geneva Shifflett had been employed by Marval in the trimming department and was terminated on January 23, 1984, after a leave of absence due to a back injury when she refused reinstatement to its eviscerating department. Shifflett said she could not tolerate the smell and sight of blood, and insisted that she be reinstated to her former position under the terms of the collective bargaining agreement. Again, the Shifflett grievance resulted in arbitration, in which arbitrator Paul J. Fasser, Jr., upheld the union's contention that Shifflett was due reinstatement to her former position and back pay from the date of termination to the date of reinstatement. The *Shifflett* award issued on February 15, 1985, and Shifflett was reinstated on or about March 28, 1985. On April 25, 1985, Marval tendered to Shifflett back pay from the date of termination to the date of the expiration of the collective bargaining agreement. Marval has filed suit in this court for declaratory relief seeking that this court determine that back pay should extend only through June 2, 1984, that plaintiff has fully complied with the arbitrator's award, and for other costs and fees.

### ENFORCEMENT OF THE AWARDS

■ This court has already ruled on the parties' arguments regarding the validity of the arbitration awards, holding that each award properly drew its essence from the collective bargaining agreement. The only issue remaining is whether the remedies granted by the awards are enforceable. Marval has argued that the expiration of the collective bargaining agreement on June 2, 1984, precludes any awards of back pay or reinstatement after that date. Of course, it is clear that the termination of the collective bargaining agreement does not automatically extinguish the obligation to arbitrate grievances arising under the contract. *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Worker's Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). That, however, does

not answer the issue here, i.e., can the award operate to require reinstatement and back pay for periods following the expiration of the contract? It is undisputed that the collective bargaining agreement between Marval and Local 400 expired on June 2, 1984, and that no subsequent agreement was ever reached. In fact, Marval's employees went on strike after the termination of the agreement and a new union has been recognized as the employees' collective bargaining representative.

Marval has cited *General Warehousemen & Helpers v. Standard Brands, Inc.,* 579 F.2d 1282 (5th Cir.1978), *cert. dismissed,* 441 U.S. 957, 99 S.Ct. 2420, 60 L.Ed.2d 1075 (1979), 443 U.S. 913, 99 S.Ct. 3103, 61 L.Ed.2d 877 (1979), as support for its contention that an arbitration award may not extend damages beyond the expiration date of the collective bargaining agreement. In *Warehousemen,* the Fifth Circuit Court of Appeals remanded the action to the arbitrator to calculate damages for employee grievances under an expired contract and limited the possible measure of damages to the period between the date the grievance arose and the expiration of the collective bargaining agreement. However, the *Standard Brands* case is distinguishable from the case at bar because the employer therein had never litigated the issue of damages before the arbitrator.

It is not clear that the Fifth Circuit would have disturbed an arbitration award of back pay exceeding the viability of the collective bargaining agreement, given the United States Supreme Court's opinion in *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). *Enterprise Wheel,* one of the landmark Steelworkers' Trilogy cases, demonstrated the Supreme Court's extreme reluctance to meddle with arbitration awards. The arbitrator had awarded back pay beyond the date of the collective bargaining agreement's expiration, along with reinstatement. The Supreme Court upheld the award, stating that:

The opinion of the arbitrator in this case, as it bears upon the award of back pay beyond the date of the agreement's expiration and reinstatement, is ambiguous. It may be read as based solely upon the arbitrator's view of the requirements of enacted legislation, which would mean that he exceeded the scope of the submission. Or it may be read as embodying a construction of the agreement itself, perhaps with the arbitrator looking to 'the law' for help in determining the sense of the agreement. A mere ambiguity in the opinion, accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.... Moreover, we see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration. It is not apparent that he went beyond the submission. The Court of Appeals' opinion refusing to enforce the reinstatement and partial back pay portions of the award was not based upon any finding that the arbitrator did not premise his award on his construction of the contract. It merely disagreed with the arbitrator's construction of it.

... It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

363 U.S. at 597–99, 80 S.Ct. at 1361–62.

Marval has attempted to distinguish *Enterprise Wheel,* asserting that the employees therein had a continuing expectation of employment under the same wages and benefits since they were still represented by the union whose bargaining agreement had expired. Marval asserts that without such union representation, the company was free to set its own terms and conditions of employment since all employees were considered to be employed at will under Virginia law. However, this issue

was raised by Justice Whittaker, dissenting, who argued that

> [o]nce the contract expired, no rights continued to accrue under it to the employees. Thereafter they had no contractual right to demand that the employer continue to employ them, and *a fortiori* the arbitrator did not have power to order the employer to do so; nor did the arbitrator have power to order the employer to pay wages to them after the date of termination of the contract, which was also the effective date of their discharges.

*Id.* at 601–02, 80 S.Ct. at 1363. Clearly then, the majority in *Enterprise Wheel* had an opportunity to address the concerns raised by Marval in the instant case, and dismissed them as of lesser importance than the need for judicial deference to arbitration awards.

Certain courts have continued to hold that expiration of the collective bargaining agreement precludes reinstatement and an award of damages for periods after that date, despite *Enterprise Wheel*. For example, Marval relies upon *In re Local 259, United Auto Workers*, 392 F.Supp. 1044 (S.D.N.Y.1975), in which the district court held that former employees could not be granted reinstatement, "not only because the collective bargaining agreement has expired, but also because such a remedy would be in direct conflict with the remedy afforded by the NLRB." *Id.* at 1050. However, that court considered the matter of conflict with the NLRB at great length, yet cited no case law in support of its finding that reinstatement was precluded by the expiration of the collective bargaining agreement. In fact, that court specifically avoided the issue of the agreement's expiration and decided the case solely on the issue of whether reinstatement would be in conflict with the NLRB ruling.

Marval attempts to add *District 17, United Mine Workers of America v. Allied Corporation*, 735 F.2d 121 (4th Cir. 1984), as a case which held that employer obligations and employee rights do not survive the expiration of a collective bargaining agreement. Not only was that case a review of a district court opinion and not an arbitration award, but the court also recognized that "[t]he clear language of the wage agreement required health benefit payments *only during the term of the contract and not thereafter.*" *Id.* at 124 (emphasis added). That sentence creates a significant distinction between the *Allied Corporation* contract and that in the instant case. The collective bargaining agreement between Marval Poultry and Local 400 is silent regarding any events which may occur after the expiration of the agreement. The contract simply expires. In light of *Enterprise Wheel*, this may be poor draftsmanship, since arbitration awards were clearly known to include reinstatement and back pay for periods after the expiration of the collective bargaining agreement.

Marval also suggests that *Baltimore Regional Joint Board v. Webster Clothes*, 596 F.2d 95 (4th Cir.1979), somehow supports its contention that the expiration of the collective bargaining agreement limits arbitration remedies. However, the court in *Webster Clothes* clearly distinguished its facts from those in *Enterprise Wheel*, and held that an award of punitive damages to a union for an employer's breach of the bargaining agreement by contracting, without the union's consent, to acquire clothing manufactured by outside sources was improper. Not only was the award of punitive damages held not to draw its essence from the bargaining agreement, but the union in that case also could not prove any demonstrable losses. This court has already held that the award of back pay and reinstatement drew its essence from the bargaining agreement in the instant case; moreover, the termination of employees Rexrode and Shifflett clearly created compensable losses on the part of those individuals, assuming that each prevailed on the respective grievances.

This court cannot agree with Marval's contention that *Roy Stone Transfer Corp. v. Teamsters Local 22*, 752 F.2d 949 (4th Cir.1985), is in any way applicable to the

instant controversy. Marvel argues that this opinion held that a lower court may properly limit the back pay period of an unlawfully discharged employee from the date of discharge to the date of the employer's offer to transfer the employee to another city. The arbitrator had ordered that the employee be made whole for all wages lost, and the employee in *Roy Stone* refused the reinstatement subject to transfer. It is important to note, however, that the collective bargaining agreement in *Roy Stone* allowed for employer transfers of employees covered by the agreement. Judge Turk, in the District Court decision, simply reduced the arbitrator's award to the date of reinstatement with a condition of transfer.

Clearly, in *Roy Stone* reinstatement past the date of the conditional offer would exceed the scope of the collective bargaining agreement. Therefore, the arbitrator's award for periods after this offer could not have drawn its essence from the agreement. This does not mean that the back pay award as to the period prior to the conditional offer did not draw its essence from the collective bargaining agreement. Marval may have been misled by the dissent in *Roy Stone*, which stated that "[h]aving found that the arbitrator's 'award in this case did "draw its essence from the collective bargaining agreement,"' I fail to see how the majority then could conclude anything but that the district court exceeded the bounds of its *Enterprise* authority by modifying the arbitrator's award and substituting its own judgment on an arbitrable issue." *Id.* at 952. Marval's interpretation of the majority opinion in *Roy Stone*, even though buttressed by the comments of the dissent, fails to allow for the fact that an award which draws its essence from the agreement may grant an improper remedy, where the appropriate remedies are not spelled out in the agreement. Thus it is the opinion of this court that *Roy Stone* does not allow this court to limit a remedy which is drawn from the contract terms—employees of Marval were not subject to

routine transfers as were the employees in *Roy Stone.*

Arbitration proceedings have traditionally been viewed as a means of avoiding protracted and extensive court litigation. In order to further these goals, arbitrators' decisions must be respected by courts, or else the arbitration proceedings would simply add to the layers of litigation needed to settle these controversies. In *Mogge v. District 8, International Association of Machinists,* 454 F.2d 510 (7th Cir.1971), the court held that the arbitrator was fully justified in awarding reinstatement and back pay after the alleged expiration of the parties' collective bargaining contract, "[e]ven assuming that the contract had expired, ..." holding that the arbitrator had not exceeded his contractual authority. *Mogge, supra,* at 513. In support of its decision, the Seventh Circuit noted that "[t]he reported decisions make it abundantly clear that where the contract is not explicit concerning the proper remedy, the arbitrator is given wide latitude in fashioning an appropriate remedy." *Id.* at 514.

The arbitrators' grants of reinstatement and back pay are also supported by *ILWU Local 142 v. Land & Construction, Inc.,* 498 F.2d 201 (9th Cir.1974), which held that "[c]alculating back pay to the date of the arbitration award manifests no infidelity to the collective bargaining agreement between the plaintiff and defendant," where the collective bargaining agreement had expired during the course of arbitration and the plaintiff union had been replaced as a bargaining representative by a different union. This refutes Marval's assertion that the company's withdrawal of recognition of the union as a bargaining representative in the instant case precludes the employees' continuing expectation of employment under the same wages and benefits. One need only look to the collective bargaining agreement between the parties to see that it is silent as to conditions after expiration. This is especially important since cases, including *ILWU Local 142,* have held that lack of provisions limiting back pay to a period ending with the expiration of the collective bargaining agree-

ment allows the arbitrator to fashion such a remedy. As noted in *ILWU Local 142:*

There is nothing in the April, 1968 agreement between Land & Construction Co., Inc. and ILWU which terminates the Section 16 grievance procedure upon the expiration of the agreement. Nor is there any provision limiting back pay to a period ending with the expiration of the collective bargaining agreement. The only explicit provision in the agreement dealing with back pay relates to improper discharges and disciplinary suspensions and not to temporary layoffs. Even this provision limits back pay only to that pay 'lost because of the discharge or suspension.' It is obvious that back pay lost because of improper discharge or suspension could exceed that which accrues to the date of termination of the collective bargaining agreement. It follows that the arbitrator was faithful in the April, 1968 agreement in holding that its termination neither ousted him of jurisdiction to arbitrate nor limited back pay to that accruable to the date of termination.

498 F.2d at 204. *Accord, Atomic Uniform Corporation v. ILGWU,* 86 LRRM 2331 (D.S.D.N.Y.1983). These same statements can easily be made about the collective bargaining agreement between Local 400 and Marval. This is damaging to Marval's arguments, since these decisions have been well established case law for many years. If Marval wished to limit its liability for back pay awards to the date of expiration of the collective bargaining agreement, such provisions could easily have been inserted into the agreement of 1981.

■ Back pay is particularly appropriate where the employees have a continuing expectation of employment. "The expiration date of a bargaining contract does not place the employee in jeopardy of losing his job at the termination of the agreement." *Richardson v. Communications Workers of America,* 443 F.2d 974, 978 (8th Cir. 1971). Even though Marval's employees went on strike after the expiration of the bargaining agreement, many of its employees continued to enjoy the same wages and benefits beyond the expiration of the con-

tract. While this court may have felt disinclined to fashion quite so broad a remedy as that rendered by the arbitrator, "a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one ..." *W.R. Grace & Co. v. Local 759,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983).

ISSUE PRECLUSION

The final and perhaps most forceful factor in favor of upholding the arbitrator's remedy of back pay and reinstatement is simply that the company failed to raise the issue of the expiration of the collective bargaining agreement during the pendency of the arbitration proceedings, as it likewise failed to raise the issue of mitigation of damages. As in *Mogge, supra,* the only evidence which Marval has presented concerning these issues was offered for the first time in District Court. These matters were never presented to the arbitrator nor has there been any showing that they were unavailable at that time nor any reason given for why they were not presented. As noted in *Mogge,*

[s]ince the burden was on [the employer] to prove to the arbitrator that the contract had expired so that he could take this into consideration in fashioning a remedy, it may not now complain that the award is unjustified. On the state of the record presented to the arbitrator, he was fully justified in rewarding reinstatement and back pay after the alleged expiration of the contract.

Having failed without cause to bring these extraneous matters to the arbitrator's attention, [the employer] may not supplement the record at this late date. The national labor policy of encouraging private arbitration of labor disputes, because of its potential for expeditious disposition of these matters without resort to the courts, has been thwarted in this protracted case. To allow [the employer], after the arbitration, to have the court supplement the record with information that was available at the time of

arbitration would further undermine the very purpose of private arbitration. We have concluded that these matters were never properly preserved for appeal.

454 F.2d at 513 (footnote omitted). This holding of the *Mogge* opinion is virtually indistinguishable from the instant controversy, despite Marval's assertions to the contrary, and is compelling. *See also International Chemical Worker's Union, Local 566 v. Mobay Chemical Corporation,* 755 F.2d 1107 (4th Cir.1985).

Whether a defense is technically considered to have been waived or that the parties are considered to be estopped from raising it, the result is the same: a party may not raise new legal defenses after the award has been issued. *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators Warehouse Independent Truck Drivers Union, Local 1,* 611 F.2d 580 (5th Cir.1980). The list of cases holding that a litigant may not raise arbitrable issues for the first time at the district court level is exhaustive, to say the least. *United Steel Workers of America v. American Smelting Company,* 648 F.2d 863 (3rd Cir.1981); *Daisy v. Lindy's Coffee Shop, Inc.,* 397 F.Supp. 767 (C.D.Calif.1974); *Machinists, Local 701 v. Holiday Oldsmobile,* 356 F.Supp. 1325 (N.D.Ill.1972); *Falstaff Brewing Corp. v. Local 153,* 479 F.Supp. 850 (D.N.J.1987).

Marval's contention that in each of the above cases the courts precluded issues that were "the whole question before the arbitrator" is unfounded. Back pay and reinstatement orders being the standard arsenal of arbitrators for employee grievances under collective bargaining agreements, the employer's assertion that somehow these matters were not at issue before the *Rexrode* and *Shifflett* arbitrators is difficult to accept. Here the expiration of the contract and the beginning of the strike occurred over six months before the completion of the *Rexrode* proceedings and over eight months before the issuance of the *Shifflett* decision. Marval's failure to raise these various points prevents these contentions from being considered at this very late date. *See also United Steel Workers of America v. Smoke-Craft, Inc.,*

652 F.2d 1356, 1360 (9th Cir.1981), which states:

> Because Smoke-Craft failed to raise before the arbitrator both the question of the propriety of the Steelworkers' individual representation of the aggrieved employees and the question whether a settlement had been reached, we cannot countenance these claims on appeal. Smoke-Craft had an affirmative obligation to present to the arbitrator any arguments why the arbitration should not proceed. Parties to arbitration proceedings cannot sit idle while an arbitration decision is rendered and then, if the decision is adverse, seek to attack the award collaterally on grounds not raised before the arbitrator. To rule otherwise would be to thwart the national labor policy of encouraging the expeditious private arbitration of labor disputes without resort to the courts.

(Citations omitted.)

In this case the collective bargaining agreement expired June 2, 1984. On October 26, 1984, arbitrator Fishgold issued the *Rexrode* award, mandating reinstatement and "back pay from the date of termination to the date of reinstatement." Not only did Marval fail to brief the issue of the expiration of the collective bargaining agreement, but it also may not argue that it did not suspect that reinstatement was a likely remedy in either the *Rexrode* or the *Shifflett* proceedings. In concurrent disputes under other arbitration proceedings, reinstatement and back pay were awarded to another Marval employee, Pam Jack, on November 30, 1984, and to Charles Warr on December 13, 1984. On December 15, 1984, Marval resubmitted its request for clarification of the *Rexrode* award, yet again failed to raise the issues which it now wishes to assert as defenses. Marval's continued silence as to these issues during the pendency of the *Shifflett* proceedings, which resulted in an award on February 15, 1985, makes clear that the employer simply did not offer these defenses in any arbitration proceedings until some time after February, 1985. Such afterthoughts should not form the basis of continued, protracted litigation in federal courts.

For the reasons stated above, it is the decision of this court that summary judgment should be granted in favor of Local 400, upholding the arbitration awards of Marval's employees, John Rexrode and Geneva Shifflett.

An appropriate Order shall this day issue.